# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| FELICIANO VELAZQUEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 13 C 6636 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Pursuant to a written plea agreement, Feliciano Velazquez pleaded guilty to possessing, with intent to distribute, quantities of cocaine. He sold the cocaine to an undercover law enforcement agent in June 2011 and was arrested in July 2011 while transporting an additional quantity of cocaine that he intended to deliver to the same undercover agent. Velazquez was sentenced to a term of 46 months' imprisonment and three years' supervised release.

Velazquez has filed a pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. He asserts two grounds for the motion. Ground One is that he instructed his attorney, Alexander Salerno, to file an appeal, but Salerno failed to do so. Ground Two is that Salerno rendered constitutionally ineffective assistance in connection with both the guilty plea and the sentencing.

Attached to the petitioner's motion are a memorandum of law and an affidavit in which he provides his version of what occurred.

We will discuss the petitioner's complaints in turn.

### **The Guilty Plea**

In his affidavit, the petitioner states:

> When the Judge imposed the sentence [of] a term of 46 months imprisonment and three years supervised release, I was clear and manifesting my disagreement and dissatisfaction to my counsel because said sentence received was absolutely opposed to his promise which he made to induce me to sign the Plea Agreement and to accept my culpability under by telling me that I should receive a term of 24 to 30 months imprisonment.

(Velazquez Aff. ¶ 6.)[1]

The petitioner has the burden of proving the grounds of his § 2255 motion. In order to determine whether he has established that his attorney "induced" him to plead guilty by a promise that he would receive a sentence of 24 to 30 months' imprisonment, we look first at the transcript of the plea itself:

> THE COURT: There's a difference between the amount of cocaine stated in the plea agreement on Page 4, which is 497.5 grams, and the amount that is referred to in the Guideline calculations, which is in excess of 500 grams. So there's a 3-gram difference. What accounts for that?
>
> MR. SALERNO: Judge, I've explained to the defendant that the Count to which he pleads guilty is the 497.5-gram delivery or attempted delivery or possession with intent

---

[1] The government points out that the word "should" in the penultimate line of the paragraph is different from "would." Reading the paragraph as a whole, however, we think the sensible interpretation, in light of the language "his promise which he made to induce me to sign the Plea Agreement and to accept my culpability," is that the petitioner is saying that his attorney promised him that he <u>would</u> receive a term of 24 to 30 months.

to deliver. The other relevant conduct places the amount of actual drugs over 500 grams.

THE COURT: Oh, I see. It's the relevant conduct that raises it over the 500.

MR. SALERNO: Yes, Judge. But there is no mandatory minimum on the —

THE COURT: I see.

MR. SALERNO: – on the —

THE COURT: I see.

MR. TZUR [Asst. U.S. Attorney]: That's correct, your Honor.

THE COURT: Thank you.
All right. Then let me explain to you then, Mr. Velazquez, what the possible penalties are that you face if you plead guilty here.
The statute that defines this offense provides for a maximum sentence of 20 years in prison and provides for a fine up to a million dollars and then a period of supervised release from three years up to life, and supervised release is a period of time after your release from prison during which you have to obey certain rules and regulations and report to a probation officer, and if you violate any of the rules and regulations of the supervised release, you can go back to prison for more time.
You understand that?

THE DEFENDANT: I understand that.

THE COURT: Now, the actual sentence that the Court is likely to impose will be governed by what we call the Sentencing Guidelines, and these are Guidelines published by the Sentencing Commission of the United States which the Court is required to consult and consider, but the Court is not required to follow them. I usually do. Not always. Sometimes I disagree with them, and I don't follow them.
But the Guidelines here provide for a possible sentence in a range of 46 months to 57 months, so that would be on the low end, it would be 46 months, a little under four years, and at the high end, it would be 57 months, almost six years. So if I follow the Guidelines and apply them, find it to be appropriate that I do so,

>then your sentence is likely to be in that range, somewhere between 46 months and 57 months.
>    Do you understand that?
>
>THE DEFENDANT: Yes, I understand.
>
>THE COURT: It's important that you also understand that I'm not obligated to stay within that range. I can go below it or I can go above it, and I could go up to the maximum of 20 years. Now, obviously, I'm not going to do that, but it's possible that I could go above 57 months, and it's also possible I could go below 46 months. I don't know myself what I'm going to do, and, therefore, if anyone told you they know what I'm going to do, that would not be something you should rely on.
>    You understand that?
>
>THE DEFENDANT: I understand that.
>
>THE COURT: In other words, you're taking your chances on what your sentence will be if you plead guilty.
>    Do you understand that?
>
>THE DEFENDANT: I understand that.
>
>THE COURT: Now, in addition to the period of time in prison, there's a supervised release period that I've mentioned, and that can range anywhere from three years to life.
>    Now, if you plead guilty today and you are disappointed in the sentence I enter, in other words, if I go above what you expect, you will not have a right to withdraw your plea of guilty.
>    Do you understand that?
>
>THE DEFENDANT: I understand that.
>
>THE COURT: All right.

(June 13, 2012 Tr. at 6-9.)

As part of its response to the petitioner's motion, the government has provided the affidavit of Alexander Salerno. Mr. Salerno states: "I never told Mr. Velazquez that he would receive a sentence of two years, in fact I indicated to him on a number of

occasions that his potential sentence would most be likely be within the guideline range during the negotiation of plea and during the time of preparation for trial." (Salerno Aff. ¶ 9.)[2] In light of the plea colloquy quoted above, which contains no mention of a 24- to 30-month guideline range, but only a 46- to 57-month range, the petitioner's allegation that Salerno promised him a 24- to 30-month sentence is implausible.  If the petitioner had been given such a promise, he had every opportunity to object to the court's indication of a 46- to 57-month range, but he stood silent.  He stood silent again at the sentencing hearing on October 10, 2012, when the following occurred:

> THE COURT: Good afternoon everyone.
>     We're here for sentencing for Mr. Velazquez this afternoon.
>     Let me first check with counsel to see whether everybody agrees on the appropriate Guidelines.  As I understand it, there is a total offense level of 23, a criminal history of I, and that yields a total Guideline range of 46 to 57 months.  Is that agreed?
>
> MR. SALERNO: That's correct, your Honor.
>
> MR. TZUR: And that's the government's position as well, your Honor.
>
> THE COURT: All right.

(Oct. 10, 2012 Tr. at 2.)

---

[2] This statement does not quite track the petitioner's allegation that Salerno promised him that he would receive a sentence of "24 to 30 months," although, read together with paragraph 10 of Salerno's affidavit, it is clear that Salerno denies having told the petitioner that he would receive a sentence below 24 months, the low end of the guideline range.

The petitioner's contention that attorney Salerno induced him to plead guilty by promising him that he would receive a sentence of 24 to 30 months is clearly false.

There is no showing that Salerno's representations with regard to the petitioner's plea of guilty was deficient in any respect.

### **The Sentencing**

The petitioner's motion does not discuss his specific complaints about how Mr. Salerno handled the sentencing. However, his memorandum of law includes his statement that Count III of the indictment, the count to which he pled guilty, involved less than 500 grams of cocaine and therefore should have had a guideline range lower than 46-57 months. (Mem. at 4.) The petitioner also complains of counsel's failure to argue that petitioner was entitled to a two-level "safety valve" reduction. (Mem. at 11.)

Neither of these arguments supports any claim of ineffective representation by Mr. Salerno. As far as the amount of cocaine is concerned, the additional cocaine involved in the petitioner's relevant conduct brought the total amount of cocaine for which he was responsible to well over 500 grams. That was explained in the petitioner's presence when he entered his plea of guilty. (June 13, 2012 Tr., quoted supra at 2-3.)

The petitioner's claim that Salerno should have argued for a two-level "safety valve" reduction in his guideline range is frivolous. In order to qualify for the safety valve, a defendant

must make a full disclosure of all the facts and circumstances of his crime, including, in a drug case, the name of his drug supplier. Salerno states under oath that he discussed with petitioner on a number of occasions the possibility of a safety-valve proffer and that he explained to petitioner that in order to qualify, petitioner would have to identify his cocaine supplier. "Mr. Velazquez told me that, because of this, he did not want to proffer." (Salerno Aff. ¶ 7.)

The petitioner filed a reply brief on March 18, 2014. He states: "Mr. Salerno . . . committed perjury when he said that he told Velazquez regarding the Safety Valve. It is false because Mr. Salerno never spoke with Velazquez the topic regarding with the Safety Valve." (Reply at 2-3.) Velazquez took care not to verify this paragraph of the reply.

It is worth noting that the petitioner does not state that, had he been given an explanation of the safety valve, he would have named his cocaine supplier.

The petitioner has failed to establish that Mr. Salerno failed to discuss the safety valve with him or that he was willing to divulge the name of his cocaine supplier.

### **Failure to File an Appeal**

The petitioner correctly points out that when counsel is instructed to file a notice of appeal, he or she must do so. The failure to do so is a Sixth Amendment violation, regardless of

whether an appeal was likely to succeed. The remedy is for the court to vacate the criminal judgment and reimpose it in order to restart the time for appeal. Ryan v. United States, 657 F.3d 604, 606 (7th Cir. 2011). If counsel believes that the appeal is frivolous, the proper procedure is to file a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and seek leave to withdraw.

The petitioner alleges under oath that after the sentencing on October 10, 2012, before he was taken from the courtroom, he instructed Mr. Salerno to "submit an appeal on my behalf upon the sentence imposed against me." (Velazquez Aff. ¶ 7.) Petitioner provides no other details about this alleged conversation.

In his own affidavit, Mr. Salerno denies that he was instructed to file an appeal. He states that he discussed the matter with the petitioner and petitioner's family, explaining to them that "an appeal would be frivolous" because the court had considered the relevant Section 3553 factors and imposed a sentence within the applicable guideline range:

> I explained this to Mr. Velazquez prior to and subsequent to the sentencing. Mr. Velazquez agreed with my assessment and decision and after further discussions with his family, subsequent to Mr. Velazquez being incarcerated we agreed not to file the notice of appeal.

(Salerno Aff. ¶¶ 5-6.)

In his reply, petitioner does not provide any further details about his alleged request to Salerno, such as a supplemental

affidavit, affidavits from family members, or other evidence to support his contention. He simply re-submits his original affidavit, repeats his assertion that he instructed Salerno to file an appeal, and argues that he is entitled to an evidentiary hearing on the claim.

The central issue is whether petitioner actually instructed Salerno to file an appeal. Petitioner has the burden of proof and is entitled to an evidentiary hearing only where he submits a "detailed and specific affidavit which shows that the petitioner ha[s] actual proof of the allegations going beyond mere unsupported assertions." Kafo v. United States, 467 F.3d 1063, 1067 (7th Cir. 2006); see also Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002).

Petitioner's affidavit is neither detailed nor specific, and despite having had the opportunity to file a supplemental and more detailed affidavit or other evidence in response to Salerno's detailed and specific affidavit, petitioner failed to do so. He provides no indication of what his ground for appeal would have been. In his reply, he does not address Salerno's statements about the discussions that resulted in an agreement that no appeal would be filed. Instead, he merely reasserts his bare allegation that he instructed Salerno to file an appeal after the sentencing. (Reply ¶ 3.) That is not sufficient evidence to warrant an evidentiary hearing. See Kafo, 467 F.3d at 1067 (an evidentiary hearing is not

required when a petitioner's allegations are "vague, conclusory, or palpably incredible rather than detailed and specific"). Accordingly, petitioner fails to meet his burden as to his ineffective assistance of counsel claim based on his unsubstantiated allegation that he asked counsel to file an appeal.

## **CONCLUSION**

The petitioner has failed to show that his attorney was constitutionally ineffective in his representation of him. Accordingly, the motion to vacate the conviction and sentence pursuant to 28 U.S.C. § 2255 is denied.

There are no genuine factual issues that require resolution; therefore, the petitioner's motion for an evidentiary hearing is denied.

Because the petitioner has not made a substantial showing of the denial of a constitutional right, we deny a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

DATE:    April 30, 2014

ENTER:   _____
         John F. Grady, United States District Judge